# IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 16-09207-JJG |
| NIKKI LYNN NICKSON<br>    fka NIKKI LYNN WRIGHT<br>    dba NICKSON FINANCIAL SERVICES | CHAPTER 13 |
| Debtor | JUDGE JEFFREY J. GRAHAM |

## JOINT MOTION TO MODIFY A SECURED DEBT

Now comes The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank, Trustee for Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates Series 2004-RS9 ("Movant"), through counsel, Debtor, through counsel, John T. Steinkamp, and moves this Court for permission to modify a Secured Debt with the Debtor.

Movant has approved the Debtors as to the Loan Modification that would bring the loan current and lower the monthly mortgage payments. A copy of the Loan Modification Agreement is attached hereto.

| | **Pre-modification** | **Modified** |
|---|---|---|
| Monthly Payment (total): | $1,510.13 | $1,186.52 |
| Principal and interest: | $1,154.15 | $782.19 |
| Escrow: | $355.98 | $404.33 |
| Interest Rate: | 4.5% | 3.000% |
| Maturity Date: | August 1, 2034 | August 1, 2034 |
| Principal Balance: | $240,795.82 per POC filed 12/30/2016 | $242,238.03 |
| First monthly payment: | | January 1, 2017 |
| Balloon payment: | | There is a balloon payment of $176,779.53 due upon maturity |

Upon information and belief, the plan remains feasible with the modified loan terms.

WHEREFORE, Movant requests that the Loan Modification Agreement be approved.

Respectfully submitted,

/s/ Steven H. Patterson

Steven H. Patterson
Attorney for Movant
Reisenfeld & Associates, LPA LLC
3962 Red Bank Road
Cincinnati, OH 45227
voice: (513) 322-7000
facsimile: (513) 322-7099
e-mail: inbk@rslegal.com

/s/ John T. Steinkamp

John T. Steinkamp
Attorney for Debtor
5214 S. East Street, Suite D-1
Indianapolis, IN 46227
voice: 317-780-8300
facsimile: 317-217-1320
e-mail: steinkamplaw@yahoo.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing Motion has been served this 27 day of January, 2017 by regular U.S. Mail, postage prepaid, or by electronic e-file upon the following:

**Electronically via ECF Mail:**

John T. Steinkamp, Debtor`s Counsel
steinkamplaw@yahoo.com

Ann M. DeLaney, Bankruptcy Trustee
ECFdelaney@trustee13.com

U.S. Trustee
(Registered Address)@usdoj.gov

**Via Regular U.S. Mail:**

Nikki Lynn Nickson, Debtor
P.O. Box 68873
Indianapolis, IN 46268

/s/ Steven H. Patterson

Steven H. Patterson

_____ [Space Above This Line For Recording Data] _____

Investor Loan Number ▊▊▊▊▊▊ Investor Number: 356   Borrower: NIKKI L NICKSON

# MODIFICATION AGREEMENT
## (Step Two of Two-Step Documentation Process)

Borrower ("I"):  NIKKI L NICKSON AND CLEETUS M NICKSON JR whose address is 9927 SPLIT ROCK WAY, INDIANAPOLIS, IN 46234 ("Borrower").

If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

Lender or Servicer ("Lender"):  Specialized Loan Servicing LLC a   whose principal place of business and mailing address is 8742 Lucent Blvd. Ste 300, Highlands Ranch, CO 80129 ("Lender").

Date of first lien mortgage, deed of trust, or security deed ("Mortgage") recorded in Book or Liber See Original Instrument  , of the  Records of MARION County, INDIANA and Note ("Note"): July 9, 2004

Loan Number: ▊▊▊▊▊▊

Property Address ("Property"):  9927 SPLIT ROCK WAY , INDIANAPOLIS, INDIANA 46234

   See Legal description referenced in the original security instrument.

If my representations in Section 1 continue to be true in all material respects, then this Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage.  The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents."  Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations.**   I certify, represent to Lender, covenant and agree:

    A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;
    B. Property Type: Single Family

    C.    There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

    D.    I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Modification Program ("Program"));

    E.    Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

    F.    If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

    G.    I have made or will make all payments required under a trial period plan.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

    A.    If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

    B.    I understand that the Loan Documents will not be modified unless and until the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on December 1, 2016 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on January 1, 2017.

    A.    The new Maturity Date will be: August 1, 2034.

    B.    The modified Principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges) and deferred principal and other deferred amounts from a prior modification, collectively, "Unpaid Amounts") less any amounts paid to Lender but not previously credited to my Loan. The new Principal balance of my Note will be $242,238.03 (the 'New Principal Balance'). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C.  $23,738.03 of the New Principal Balance shall be deferred (the 'Deferred Principal Balance') and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the 'Interest Bearing Principal Balance' and this amount is $218,500.00. Interest at the rate of 3.000% will begin to accrue on the Interest Bearing Principal Balance as of 12/1/2016 and the first new monthly payment on the Interest Bearing Principal Balance will be due on 1/1/2017. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly P&I Payment Amount | Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-17 | 3.000% | 12/1/2016 | $782.19 | $404.33 May adjust periodically | $1,186.52 May adjust periodically | 1/1/2017 | 212 |

Borrower promises to make monthly payments of principal and interest of U.S. $ 782.19 beginning on January 1, 2017, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full.

I will make these payments every month, in addition to 1 final balloon payment in the amount of $ 176,779.53. The Balloon payment amount stated is if all monthly payments have been made as scheduled. At the end of the term, any balance remaining will have to be paid.

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

    D.    I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

    E.    If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

    F.    I agree to pay in full the Deferred Principal Balance and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.

    G.    If I make a partial prepayment of Principal, the Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

    H.    If on August 1, 2034, ('Balloon' or 'Modified Balloon Date'), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Balloon Date.

4.    **Additional Agreements.** I agree to the following:

    A.    That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

    B.    That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

    C.    To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

    D.    Funds for Escrow Items. I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items.

Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall

pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

E. That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product (s), and/ or subordination agreement (s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/ or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement (s), title insurance product (s) and/ or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Modification program.

L. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, for mailing address, where applicable, 1901 E. Voorhees Street, Suite C, Danville, IL 61834, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income,

    payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury; (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

N.    That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O.    That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

In Witness Whereof, the Lender and I have executed this Agreement.

Specialized Loan Servicing LLC
As Servicer

By: _____ (Seal)
Name: _____
Its: _____
Date: _____

_____ (Seal)  Date: 12/16/2016
NIKKI L NICKSON

_____ (Seal)  Date: _____
CLEETUS M NICKSON JR

If the borrower is an inter vivos revocable trust, we require each of the trustees to sign this document in the signature blocks below.

_____, *Trustee if the* _____ *Trust instrument dated*
_____, *for the benefit of* _____ *(Borrower)*
_____, *Trustee if the* _____ *Trust instrument dated*
_____, *for the benefit of* _____ *(Borrower)*

_____ [Space Below This Line For Acknowledgment] _____

State of INDIANA
County of  Marion

Before me, a Notary Public in and for said County and State, personally appeared NIKKI L NICKSON and CLEETUS M NICKSON JR, who acknowledged the execution of the foregoing instrument, and who, having been duly sworn, stated that any representations therein contained are true.

Witness my hand and Notarial Seal this  16th day of  December 2016.

[Seal]

_Anne Carmel Bailey_
Notary Public

Anne Carmel Bailey
Printed Name

My county of residence:  Marion

My commission expires on:  3-15-2023

```
Anne Carmel Bailey
Notary Public Seal State of Indiana
Marion County
My Commission Expires 03/15/2023
```

This instrument was prepared by Anthony Forsberg.

I affirm, under the penalties for perjury, that I have taken reasonable care to redact each Social Security number in this document, unless required by law.

_____

After Recording Return To:
Specialized Loan Servicing LLC
8742 Lucent Blvd, Ste 300
Highlands Ranch, CO 80129
Loan Resolution Department

State of COLORADO
County of _____

The foregoing instrument was acknowledged before me this _____ by _____, _____ of Specialized Loan Servicing LLC, a _____, on behalf of said entity.

[Seal]

_____
Notary Public

_____
Printed Name

My commission expires on_____